**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| marchFIRST, INC., *et al.*, | ) | Case No. 01 B 24742 |
| | ) | Substantively Consolidated |
| Debtors. | ) | |
| | ) | Honorable John D. Schwartz |
| _____ | ) | |
| | ) | |
| SBI SERVICES, INC., a Utah corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 06 A 01283 |
| ANDREW J. MAXWELL, Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>NOTICE OF FILING</u>**

To:   (See attached service list)

PLEASE TAKE NOTICE that on October 19, 2006, the undersigned electronically filed with the United States Bankruptcy Court for the Northern District of Illinois, **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**, a copy of which will be accessible through the Court's electronic filing system.

PIPAL & BERG, LLP


<u>s/ FAUSTIN A. PIPAL, JR.</u>
By:    FAUSTIN A. PIPAL, JR.
       Pipal & Berg, LLP
       150 S. Wacker Drive
       Suite 2650
       Chicago, IL 60606
       Phone: (312) 364-0080
       Fax: (312) 364-0088

## Certificate of Service

The undersigned attorney, hereby certifies that on October 19, 2006, a copy of the foregoing **NOTICE OF FILING ANSWER AND AFFIRMATIVE DEFENSES** was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

Parties receiving service electronically are as follows:

Chad Gettleman – cgettleman@ag-ltd.com
Brad Berish – bberish@agltd.com


                                        s/ FAUSTIN A. PIPAL, JR.


PIPAL & BERG, LLP
150 South Wacker Drive
Suite 2650
Chicago, Illinois 60606-4206
Tel: (312) 364-0080

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| marchFIRST, INC., *et al.*, | ) | Case No. 01 B 24742 |
| | ) | Substantively Consolidated |
| Debtors. | ) | |
| | ) | Honorable John D. Schwartz |
| _____ | ) | |
| | ) | |
| SBI SERVICES, INC., a Utah corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 06 A 01283 |
| ANDREW J. MAXWELL, Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES

Andrew J. Maxwell, Trustee, by the undersigned special counsel, Faustin Pipal, states the following as his answer:

### I.      JURISDICTION AND VENUE

1.      Jurisdiction is conferred on the Court pursuant to 28 U.S.C. §§ 157(b)(2), 1334, and 2201.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

ANSWER: The allegations of this paragraph of the complaint are admitted.

### II.      INTRODUCTION

2.      On April 12, 2001, marchFIRST, Inc. and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court").

1

ANSWER: The allegations of this paragraph of the complaint are admitted.

3.      On April 26, 2001, the Debtors moved to convert their cases to cases under Chapter 7 of the Bankruptcy Code, and the Delaware Court entered an order converting the cases on the date thereof.

ANSWER: The allegations of this paragraph of the complaint are admitted.

4.      On April 26, 2001, the United States Trustee appointed Michael B. Joseph as interim Chapter 7 trustee (the "Delaware Trustee").

ANSWER: The allegations of this paragraph of the complaint are admitted.

5.      On July 10, 2001, the Delaware Court entered an order transferring these Chapter 7 cases to this District, and on July 16, 2001, the United States Trustee in this District appointed Andrew J. Maxwell as the Chapter 7 trustee herein (the "Trustee").  Thereafter, the Trustee has continued to administer these estates.

ANSWER: The allegations of this paragraph of the complaint are admitted except that Andrew J. Maxwell was first appointed interim trustee, not trustee.

### III.    ASSET SALES BACKGROUND

6.      Following his appointment, the Delaware Trustee immediately began to solicit offers to purchase the Debtors' assets and business which had been conducted at offices throughout the United States in an effort to maximize the value of such assets for the benefit of the creditors herein and while the Debtors' employees (approximately 5,000) were still available to consummate such sales.  Ultimately, the Delaware Trustee was able to sell a portion of the Debtors' business to SBI.

ANSWER: Trustee admits that SBI's purchase of "a portion of the Debtors' business" was approved and closed during the pendency of the Chapter 7 case.  To the extent not expressly admitted, the allegations of this paragraph are denied.

7.       On June 4, 2001, the Delaware Trustee filed a motion before the Delaware Court to approve the sale to SBI of various assets of the Debtors' estates (collectively, the "Acquired Assets") (docket no. 201) (the "Sale Motion") from the sellers identified therein, marchFIRST Consulting, Inc. and CKS Partners, Inc. (collectively, the "Sellers") in accordance with the terms and conditions of that certain Asset Purchase Agreement dated April 18, 2001 (the "Original Sale Agreement"), as modified by that certain Amendment 1 to the Original Sale Agreement dated May 31, 2001 (the "Amendment") (collectively, the "SBI APA"). Copies of the Original Sale Agreement and the Amendment are attached as Exhibits A and B hereto, respectively, and made a part hereof.

ANSWER: The documents referred to in this paragraph speak for themselves.  To the extent answer to the other factual allegations of this paragraph is required, those factual allegations are admitted.

8.       On June 15,2001, the Delaware Court entered an order approving the Sale Motion and the sale of the Debtors' assets to SBI pursuant to the terms and conditions of the SBI AP A (docket no. 266) ("Sale Order"). A copy of the Sale Order is attached as Exhibit C hereto and made a part hereof. The closing of the transactions approved in the Sale Order occurred shortly after the entry thereof (the "Closing"). In connection with the Closing, SBI paid total sales proceeds to the Debtors' estates in the approximate amount of $5,250,000.

ANSWER: The documents referred to in this paragraph speak for themselves.  To the extent answer to the other factual allegations of this paragraph is required, Defendant lacks

information and knowledge sufficient to admit or deny the allegations of this paragraph of the

complaint, particularly with regard to when the closing occurred, and therefore neither admits

nor denies them.

9.     The Acquired Assets are more fully set forth in Schedule 1.01 to the Original Sale

Agreement attached hereto, and include as item (6) the following: "The methods, processes,

tools, frameworks, templates, methodologies and related intellectual property owned by Sellers

which are used solely with respect to the Business being acquired by Purchaser." (Emphasis

supplied).

ANSWER: The document referred to in this paragraph speaks for itself.  If and to the

extent the factual allegations of this paragraph of the complaint conflict with the document, the

allegations are denied.

10.     As defined in Article 11 of the Original Sale Agreement, the "Business" of the

Debtors being acquired by SBI was that "currently being conducted from the Locations."  The

"Locations" were defined as the Debtors' "offices in San Francisco and Cupertino, California,

Portland, Oregon and Denver, Colorado,"

ANSWER: The document referred to in this paragraph speaks for itself.  If and to the

extent the factual allegations of this paragraph of the complaint conflict with the Agreement, the

allegations are denied.

11.     At the time of the Closing, and continuing at all times thereafter, it was SBI's

understanding that the Acquired Assets included the following two (2) patents which were

owned by the Sellers solely in connection with the operation of their Business at the Locations,

as those terms are defined above: (a) U. S. Patent No. 5,544,354 issued August 6, 1996 entitled

"Multimedia Matrix Architecture User Interface"; and (b) U. S. Patent No. 6,215,502 issued

April 10, 2001 entitled "Method and Apparatus for Automatically Reconfiguring Graphical Objects Relative to New Graphical Layouts" (collectively, the "Patents"). To that end, pursuant to filings made by SBI with the U. S. Patent and Trademark Office ("USPTO") following the entry of the Sale Order, SBI's claims as the record owner of the Patents was made of public record. Moreover, since the Closing, SBI has continued to pay all maintenance fees and costs necessary to maintain the Patents in full force and effect, as otherwise, the Patents would have expired.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent that an answer is required to factual allegations, those allegations are denied.

12.     SBI further believes that due to the turmoil surrounding the Debtors' estates and their representatives at the time of the bankruptcy filings with the Delaware Court and the asset sales, as well as the urgency to complete such asset sales to preserve value for the Debtors' estates before the Debtors' many employees all left their positions given the Debtors' impending demise, there was an unnecessary failure of the SBI APA to specifically recite the Patents by number with the list of Acquired Assets.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent an answer is required to factual allegations, those allegations are denied.

**IV.     CASE OR CONTROVERSY AT ISSUE**

13.     SBI has previously requested, on numerous instances, that the Trustee sign a written acknowledgment that the Acquired Assets include the Patents. The Trustee has refused to acknowledge sale of the Patents to SBI notwithstanding the fact that the Trustee has never

provided SBI with any reasons for his unwillingness to perform this ministerial act that is required under the terms of the Sale Order and the SBI APA.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent an answer is required to factual allegations, those allegations are denied.

## V.    ARGUMENT

### A.    The Patents Were Included in the Acquired Assets.

14.    There is no question but that the Patents specifically related to the Locations acquired by SBI in the SBI APA and the Sale Order. Historical information on file with the State of California and the United States Securities and Exchange Commission unequivocally support this fact.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent an answer is required to factual allegations, those allegations are denied.

### (i) U.S. Pat. No. 5.544.345 and the 410 Townsend St.. San Francisco.
### CA Office

15.    Ikonic Interactive, Inc. ("Ikonic") was the original assignee of U. S. Patent No. 5,544,345 ("Patent No.1"). Ikonic became the original assignee because the inventors of Patent No.1 were, at the time of its invention, and thereafter, employees of Ikonic who assigned their rights to the patent to Ikonic as their employer upon the filing of the initial patent application. Ikonic was acquired by USWeb Corporation ("USWeb") on April 15, 1998 through a merger with US Web Acquisition Corporation 125, a wholly-owned subsidiary of US Web. The result of

this transaction was that Ikonic merged into USWeb Acquisition Corporation 125, with USWeb

Acquisition Corporation 125 as the surviving entity of such merger.

ANSWER:  Defendant lacks information and knowledge sufficient to admit or deny the

factual allegations of this paragraph of the complaint, and therefore neither admits nor denies

them.

16.     USWeb Acquisition Corporation 125 was a Delaware corporation that, based an

information publicly available, appears to have conducted business in only one jurisdiction:

California, and through only one office located at 410 Townsend Street. San Francisco,

California 94107 ("Townsend Street Address"). Furthermore, according to the records of the

California Secretary of State, the "Agent for Service of Process" for USWeb Acquisition

Corporation 125 was Mark Pierce, whose address was listed as the Townsend Street Address.

ANSWER: Defendant lacks information and knowledge sufficient to admit or deny the

factual allegations of this paragraph of the complaint, and therefore neither admits nor denies

them.

17.     Following the merger of Ikonic into US Web Acquisition Corporation 125, the

actual location of the business of Ikonic became the Townsend Street Address.

ANSWER: Defendant lacks information and knowledge sufficient to admit or deny the

factual allegations of this paragraph of the complaint, and therefore neither admits nor denies

them.

18.     Schedule 3.05(a) of the Original Sale Agreement, a copy of which is attached as

Exhibit D hereto and made a part hereof, specified the addresses of the particular Locations that

SBI was acquiring, among which was the Townsend Street Address.

ANSWER: The Schedule speaks for itself.  If and to the extent the factual allegations of this paragraph of the complaint conflict with the Schedule, the allegations are denied.

19.     No other office of the Debtors ever used Patent No.1, and to the extent Patent No. 1 was ever used, it would have been used by Ikonic and its successor, USWeb Acquisition Corporation 125 solely.

ANSWER: The allegations of this paragraph are denied.

20.     Accordingly, because SBI purchased the Acquired Assets that were specifically noted as the registered office of US Web Acquisition Corporation 125 (which was also the exclusive office to which the operations of Ikonic could be attributed); SBI contends that the Acquired Assets included Patent No. 1 which was owned by Ikonic as the original assignee of Patent No.1.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent an answer is required to factual allegations, the allegations are denied.

**(ii) U.S. Pat. No. 6.215.502 and the 10441 Bandley Drive. Cupertino. CA Office**

21.     CKS Partners, Inc. ("CKS Partners") was the original assignee upon the issuance of U.S. Pat. No. 6,215,502 ("Patent No.2"). CKS Partners was a wholly-owned subsidiary of CKS Group, Inc., which maintained its principal place of business at 10441 Bandley Drive, Cupertino. California 95014 (according to the 10-K reports and other documents fi1ed with the U.S. Securities and Exchange Commission) (the "Bandley Drive Address").

ANSWER: Defendant lacks information and knowledge sufficient to admit or deny the allegations of this paragraph of the complaint, and therefore neither admits nor denies them.

22.    As with Patent No.1, Schedule 3.05(a) of the Original Sale Agreement specified the addresses of the particular Locations that SBI was acquiring, among which was the Bandley Drive Address. See Exhibit D hereto.

ANSWER: The Schedule speaks for itself.  If and to the extent the factual allegations of this paragraph of the complaint conflict with the Schedule, the allegations are denied.

23.    SBI does not believe that any other office of the Debtors ever used Patent No.2, and to the extent Patent No.2 was ever used, it would have been used by CKS Partners solely. Accordingly, since SBI purchased the Acquired Assets that were specifically located at the principal place of business of CKS Group, Inc. (and hence, the principal place of business of CKS Partners, Inc., its wholly owned subsidiary, which did not maintain any address independent of its parent corporation), the Acquired Assets included Patent No.2 which was owned by CKS Partners as the original assignee of Patent No.2.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent an answer is required to factual allegations, the allegations are denied.

**(iii) Intent of the Phrase "Used Solely with Respect" to the Acquired Locations**

24.    Prior to the time of the SBI Original Sale Agreement, one or more of the Debtors had sold certain assets and intellectual property to a separate third party purchaser pursuant to asset purchase agreements very similar in form and content to the SBI APA.

ANSWER: Defendant lacks information and knowledge sufficient to admit or deny the factual allegations of this paragraph of the complaint, and therefore neither admits nor denies them.

9

25.     As also previously mentioned, the Acquired Assets purchased by SBI were more fully set forth in Schedule 1.01 to the Original Sale Agreement attached hereto, and included as item (6) the following: "The methods, processes, tools, frameworks, templates, methodologies and related intellectual property owned by Sellers which are used solely with respect to the Business being acquired by Purchaser." (Emphasis supplied).

ANSWER: This paragraph is duplicative of Paragraph 9.  Trustee realleges and restates his response to Paragraph 9.

26.     SBI believes that the phrase "used solely with respect" to the Debtors' Business was inserted in the asset purchase agreements, including SBI's Original Sale Agreement, to simply ensure that there were not any assets that were being "double sold" to both SBI and the other third party purchaser. Therefore, such phrase should be viewed merely as the means by which the Debtors' attorneys were trying to avoid any possibility of a situation where assets used or registered at a particular Location could later be said to have been applicable to a different Location which was sold to the other purchaser.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent that an answer is required to factual allegations, those allegations are denied.

27.     To SBI's knowledge, neither the other third party purchaser nor any other party has ever made any claim that the assets it acquired from the Debtors ever included either of the Patents, nor have any of these entities (including the Debtors' estates and the Trustee) ever paid or even attempted to pay any of the maintenance fees that have become due and payable over the years for the Patents.

10

ANSWER: Defendant lacks information and knowledge sufficient to admit or deny the factual allegations of this paragraph of the complaint, and therefore neither admits nor denies them.

### (iv) Parties Executing The SBI Original Sale Agreement

28.     It is important to note that among the parties executing the SBI APA was CKS Partners, Inc., the original assignee of Patent No.2.

ANSWER: The allegations of this paragraph are legal arguments and conclusions to which no answer is required.

29.     At the time of the Closing with SBI, SBI was informed that CKS Partners, Inc. was a wholly-owned subsidiary one of the Debtors, but did not conduct any meaningful business operations of its own. As; such, SBI believes that CKS Partners, Inc. was specifically included as a signatory to the SBI Original Sale Agreement because it was the legal owner of many of the assets subject to such sale of that Location, including Patent No.2.

ANSWER: The allegations of this paragraph are legal arguments and conclusions to which no answer is required.  To the extent answer is required to the factual allegations, those allegations are denied.

### (v) . Maintenance Fees for the Patents

30.     It is further important to note that since the Closing, SBT has paid all the USPTO maintenance fees and costs that have become due for the Patents. Notably, no other entity (whether the Debtors' Estates, the Trustee or any other third party) has ever paid or attempted to pay such maintenance fees.  Failure to pay maintenance fees with the USPTO results in the irrevocable loss of a patent, and as such, but for SBI's failure to pay the related fees and costs for the Patents over the past 5 years would have resulted in the complete loss of the Patents.  In

addition, owners of patents clearly recognize the need to pay the USPTO maintenance fees or face the irrevocable forfeiture and cancellation of their patents. Therefore, the complete failure of any party other than SBT to pay, or even attempt to pay, the maintenance fees for the Patents over these many years demonstrates that since the Closing no other party except SBI has ever believed that it owned the Patents.

ANSWER: The allegations of this paragraph are legal arguments and conclusions to which no answer is required.  To the extent answer is required to the factual allegations, those allegations are denied.

**B.    The Trustee is Required to Acknowledge SBI's Ownership of the Patents**

31.    Section 10.13 of the Original Sale Agreement requires the parties "to execute and deliver such other instruments of conveyance... and take such other action as may be reasonably requested to implement more effectively the transfer of the Acquired Assets to the Purchaser..."

ANSWER: The document speaks for itself.  To the extent that the factual allegations of this paragraph of the complaint conflict with the document, the allegations are denied.

32.    Paragraph 4 of the Sale Order provides as follows:

The A.APA [Amended Asset Purchase Agreement with SBI] between the Debtors and SBI, as attached hereto collectively as Exhibit A and all of the terms and conditions thereof, is hereby approved.

ANSWER: The Order speaks for itself.  To the extent that the allegations of this paragraph conflict with the Order, the allegations are denied.

33.    Paragraph 5 of the Sale Order provides as follows:

12

The Trustee, on behalf of the Debtors and their estates, is authorized and directed to execute and

deliver, and empowered to perform under, consummate and implement the AAP A, together with

all additional instruments and documents that may be reasonably necessary or desirable to

implement the AAP A, and to take all further actions as may be reasonably requested by SBI for

the purpose of assigning, transferring, granting, conveying and conferring to SBI or reducing to

possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the

obligations as contemplated by the AAPA.

     ANSWER: The Order speaks for itself.  To the extent that the allegations of this

paragraph conflict with the Order, the allegations are denied.

     34.    Paragraph 16 of the Sale Order provides as follows:

Each and every federal, state, and local governmental agency or department is hereby directed to

accept for filing and/or recording any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the AAPA, if not inconsistent with

28 U.S.C. Section 959(b).

     ANSWER: The Order speaks for itself.  To the extent that the allegations of this

paragraph conflict with the Order, the allegations are denied.

     35.    Paragraph 17 of the Sale Order provides as follows:

If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis

pendens, or other documents or agreements evidencing interests with respect to the Debtors or

the Acquired Assets shall not have delivered to the Trustee prior to the Closing Date, in proper

form for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of all interests which the person or entity has with respect to the Debtors'

estates or the Acquired Assets or otherwise, then (a) the Trustee is hereby authorized and

directed to execute and file such statements, instruments, releases and other documents on behalf

of the person or entity with respect to the Acquired Assets and (b) SBI is hereby authorized to

file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or

otherwise recorded, shall constitute conclusive evidence of the release of all interests in the

Acquired Assets of any kind or nature whatsoever.

ANSWER: The Order speaks for itself.  To the extent that the allegations of this

paragraph conflict with the Order, the allegations are denied.

36.     There can be little doubt that the Sale Order and SBI AP A, as with typical and

customary provisions in most bankruptcy court sale orders and agreements of any kind, require

the parties thereto to take such actions as are reasonably necessary after the consummation of the

transaction to fully effectuate same.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to

which no answer is required.  To the extent that an answer is required to factual allegations,

those allegations are denied.

37.     As the Patents were specially associated with the Locations specifically acquired

by SBI pursuant to the SBI AP A and the Sale Order, SBI has filed assignments with the USPTO

and fully maintained the Patents at is sole cost and expense, no other parties have ever made any

claim to the Patents or attempted to exercise any ownership interests therein, it is eminently

reasonable for SBI to request that the Trustee take such action as was reasonably necessary to

specifically evidence SBI's ownership of the Patents so that if there is any value to the Patents,

SBI will be able to try to recover same.

ANSWER:  The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent that an answer is required to factual allegations, those allegations are denied.

38.     The Trustee has not cited to SBI any basis or grounds for his refusal to comply with the terms of the Court's Sale Order or the SBI APA.

ANSWER: The allegations of this paragraph are denied.

### C. SBI is Entitled to Recover Legal Fees and Costs in Connection with this Adversary Proceeding

39.     Section 10.06 of the Original Sale Agreement provides, in part, that "Should any litigation, arbitration or similar proceeding be commenced in connection with this Agreement, the party prevailing will be entitled, in addition to such other relief as may be granted, to a reasonable sum for such party's fees, costs and expenses including attorneys fees."

ANSWER: The document speaks for itself.  To the extent of the allegations of this paragraph of the complaint conflict with the document, the allegations are denied.

40.     As such, SBI believes that it is entitled to recover its attorney's fees, costs and other expenses from the Debtors' estate as a result of having to file and prosecute this adversary proceeding given the Trustee's lack of any viable response to SBI's previous request in this matter.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to which no answer is required.  To the extent that an answer is required to factual allegations, those allegations are denied.

41.     Furthermore, attorney's fees can and should be awarded to SBI in connection with their prosecution of this adversary proceeding as and for civil contempt by the Trustee for having

violated the clear terms of the Sale Order. "'In order to prevail on a contempt petition, the

complaining party must demonstrate... that the respondent has violated the express and

unequivocal command of a court order. '" In re Sekendur, 334 B.R. 609, 620 (Bankr.N.D.IL.

2005). "Violation of the court order does not have to be 'willful' to find a party in contempt.

[citations omitted]. Rather, it must be found that the offending party knowingly violated a

specific court order. [citation omitted). A party may be found in contempt if he has not been

'reasonably diligent and energetic in attempting to accomplish what was ordered. ", Id at 621.

"Courts have inherent and statutory powers to punish a party that fails to comply with the terms

of their orders, and to coerce compliance with such orders." Id. "A standard remedy in cases of

civil contempt is restitution in the form of reasonable attorney's fees." Id. Accordingly, the

Trustee should be sanctioned in the form of SBI's reasonable attorney's fees incurred in

connection with this adversary proceeding for his continuing refusal to acknowledge the sale of

the Patents to SBI as is required by the Sale Order.

ANSWER: The allegations of this paragraph are legal conclusions and arguments to

which no answer is required.  To the extent that an answer is required to factual allegations,

those allegations are denied.

## VI. APPLICABLE AUTHORITY

42.      "A bankruptcy court maintains jurisdiction to interpret it orders. Breach of

contract actions arising out of a post-petition contract approved in bankruptcy are core matters

that can be heard and decided by the bankruptcy judge pursuant to 28 U.S.C. § 157(b )(2)(A)."

In re Consolidated Medical Transport. Inc., 300 B.R. 435, 443-4 (Bankr.N.D. Ill.

2003)(Schmetterer, J.)(internal citations omitted).

ANSWER: The allegations of this paragraph are legal citations, legal conclusions, and argument to which no answer is required.

43.     ""Orders approving the sale of property' constitute core proceedings, 28 U.S.C. §157(b)(2)(N), and the Jamaica Adversary Action, which turns on the terms of the Sale Order, amounts to a request that the bankruptcy court enforce that order. We therefore deem the Jamaica Adversary Action a core proceeding and conclude that the bankruptcy court's initial decision to exercise jurisdiction over that action was not error." In re Millennium Seacarriers Inc., _F.3d_, 2006 WL 2068180, 1 (2nd Cir. July 21, 2006).

ANSWER: The allegations of this paragraph are legal citations, legal conclusions, and argument to which no answer is required.

44.     "Additionally, section 157(b)(2)(N) provides a bankruptcy court with core jurisdiction over 'orders approving the sale of property. ' It is well settled that bankruptcy courts have core jurisdiction not only to enter such orders, but to enforce them.  Since the application for the Sale Order was a core proceeding and L TV's First Claim for Relief is based on a violation of the Sale Order, this action is a core proceeding under § 157(b)(2)(A), (N), and (0). This conclusion is further supported that this Court expressly retained jurisdiction over any dispute or action in connection with the Sale Order." In re Chateau gay COI:P., 186 B.R. 561, 593 (Bankr.S.D.N.Y. 1995), affirmed 198 B.R. 848 (S.D.N.Y. 1996), affirmed 108 F.3d 1369 (2nd Cir. 1997).

ANSWER: The allegations of this paragraph are legal citations, legal conclusions and arguments, to which no answer is required.  To the extent that an answer is required to factual allegations, those allegations are denied.

45.     Moreover, paragraph 21 of the Sale Order specifically reserves the jurisdiction of this Court to "enforce and implement" the terms and conditions of the SBI AP A, including, but not limited to, "retaining jurisdiction to (a) compel delivery of the Acquired Assets to SBI."

ANSWER: The document speaks for itself.  To the extent the factual allegations of this paragraph of the complaint conflict with the docuemnt, the factual allegations are denied.

## FIRST AFFIRMATIVE DEFENSE

1.     The complaint fails to state a claim upon which relief can be granted, and it should be dismissed.

## SECOND AFFIRMATIVE DEFENSE

1.     By failing to specifically recite the subject Patents by number with the list of Acquired Assets in the SBI Asset Purchase Agreement, the Plaintiff waived its claim to said Patents and is estopped to make this claim now.

## THIRD AFFIRMATIVE DEFENSE

1.     Plaintiff's action on the Court's Sale Order dated June 15, 2001 is time barred.

## FOURTH AFFIRMATIVE DEFENSE

1.     Any money damage award in favor of the Plaintiff and against the Defendant needs to be set off by the sum of the receivables still owed by the Plaintiff to the March First Bankruptcy Estate under the sales agreements.

## FIFTH AFFIRMATIVE DEFENSE

1.      There was a lack of consideration for any alleged promise in the SBI APA that SBI was to acquire the subject Patents.

**WHEREFORE**, Andrew J. Maxwell, Trustee, prays this Court to deny any and all relief requested by SBI in its complaint, and to grant such other and further relief as this Court deems just and fair.


Respectfully submitted,
Andrew J. Maxwell, Trustee


BY: s/ FAUSTIN A. PIPAL
Faustin Pipal (ARDC No. 3127607), his special counsel
Pipal & Berg, LLP
150 S. Wacker Drive
Suite 2650
Chicago, IL  60606

## <u>Certificate of Service</u>

The undersigned attorney, hereby certifies that on October 19, 2006, a copy of the foregoing **ANSWER AND AFFIRMATIVE DEFENSES** was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

Parties receiving service electronically are as follows:

Chad Gettleman – cgettleman@ag-ltd.com
Brad Berish – bberish@agltd.com

_____
**s/ FAUSTIN A. PIPAL, JR.**

PIPAL & BERG, LLP
150 South Wacker Drive
Suite 2650
Chicago, Illinois 60606-4206
Tel: (312) 364-0080

20