<u>SETTLEMENT AGREEMENT</u>

THIS SETTLEMENT AGREEMENT ("**Agreement**") is made as of the 1st day of June, 2007 ("**Effective Date**") by and between SBI SERVICES, INC., a Utah corporation ("**SBI**"), and ANDREW J. MAXWELL, as Trustee for the estates of marchFIRST, Inc., et al., in the "Bankruptcy Case", as defined below ("**Trustee**").

<u>WITNESSETH</u>

A.   WHEREAS, on April 12, 2001, marchFIRST, Inc. and certain of its affiliates (collectively, the "**Debtors**" or the "**Debtors' Estates**") filed voluntary petitions for relief under the Bankruptcy Code (collectively, the "**Bankruptcy Case**") in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Court**");

B.   WHEREAS, on April 26, 2001, the Debtors moved to convert the Bankruptcy Case to cases under Chapter 7 of the Bankruptcy Code, and the Delaware Court entered an order granting such relief on the date thereof;

C.   WHEREAS, on April 26, 2001, the United States Trustee appointed Michael B. Joseph as interim Chapter 7 trustee (the "**Delaware Trustee**");

D.   WHEREAS, on July 10, 2001, the Delaware Court entered an order transferring the Bankruptcy Case to the Northern District of Illinois, Eastern Division, as Case Nos. 01 B 24742 (substantively consolidated) ("**Bankruptcy Court**"), and on July 16, 2001, the United States Trustee in this District appointed the Trustee as the Chapter 7 trustee in the Bankruptcy Case, and thereafter, the Trustee has continued as permanent trustee to administer the Debtors' Estates;

E.   WHEREAS, on June 4, 2001, the Delaware Trustee filed a motion before the Delaware Court (the "**Sale Motion**") to approve the sale to SBI of various assets of the Debtors' Estates (collectively, the "**Acquired Assets**") from marchFIRST, Inc. and its subsidiaries including, without limitation, marchFIRST Consulting, Inc., CKS Partners, Inc., USWeb Acquisition Corporation 125 and USWeb Acquisition Corporation 134 (collectively, the "**Sellers**") in accordance with the terms and conditions of that certain Asset Purchase Agreement dated April 18, 2001 (the "**Original Sale Agreement**"), as modified by that certain Amendment 1 to the Original Sale Agreement dated May 31, 2001 (the "**Amendment**") (collectively, the "**SBI APA**"). In connection therewith, the Delaware Trustee also filed a motion on June 4, 2001 to approve that certain Operations and Management Agreement dated April 18, 2001 between marchFIRST, Inc. and SBI (the "**Management Agreement**"), which motion was approved by a Court order entered on June 7, 2001;

**EXHIBIT A**

F. **WHEREAS**, on June 15, 2001, the Delaware Court entered an order approving the Sale Motion and the sale of the Acquired Assets to SBI pursuant to the terms and conditions of the SBI APA ("**Sale Order**"), which sale closed shortly thereafter (the "**Closing**");

G. **WHEREAS**, SBI has contended that the Acquired Assets included the following two (2) patents which were owned by the Sellers: (a) U.S. Patent No. 5,544,354 issued August 6, 1996 entitled "Multimedia Matrix Architecture User Interface"; and (b) U.S. Patent No. 6,215,502 issued April 10, 2001 entitled "Method and Apparatus for Automatically Reconfiguring Graphical Objects Relative to New Graphical Layouts" (collectively, the "**Patents**"), and Trustee has disputed that the Acquired Assets included the Patents (the "**Patent Dispute**");

H. **WHEREAS**, as a result of the Patent Dispute between SBI and the Trustee, on August 14, 2006, SBI filed that certain Complaint for Declaratory and Related Relief in the Bankruptcy Case entitled *SBI Services, Inc., Plaintiff, v. Andrew J. Maxwell, as Trustee for the estates of marchFIRST, Inc., et al., Defendant*, Adversary Case No. 06-01283 (the "**Patent Proceeding**"). As of the date hereof, the parties are vigorously contesting the Patent Proceeding which remains pending;

I. **WHEREAS**, notwithstanding anything to the contrary contained herein, neither party hereto admits or acknowledges the validity of the claims, positions and/or defenses of the other party with respect to the matters in dispute described herein, and both parties hereto expressly deny any and all wrongdoing in connection therewith;

J. **WHEREAS**, subject to the terms and condition of this Agreement, the parties hereto are willing to settle and compromise all of their disputes and controversies of every kind and nature whatsoever arising under, out of, or related to the Patents, the Patent Dispute, and/or the Patent Proceeding; and

K. **WHEREAS**, SBI and the Trustee have each concluded that the execution by them of this Agreement will avoid protracted and expensive litigation and acknowledge that the terms and provisions hereof are fair and reasonable, that each has had the benefit of legal counsel and each is receiving a substantial and valuable benefit if the transactions contemplated herein are consummated;

**NOW, THEREFORE**, for and in consideration of the promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and for the performance of the mutual covenants hereinafter to be performed, the parties hereto agree to the foregoing and as follows:

1. <u>Recitals</u>. The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement and describing the

2

circumstances surrounding its execution. Accordingly, said recitals are, by express reference, made a part of the covenants hereof, and this Agreement shall be construed in the light thereof.

2. **Resolution of Patent Issues**.

(a) The Trustee hereby acknowledges and agrees that all right, title and interest, of every kind or nature whatsoever, in and to the Patents (including, without limitation, all know-how incorporated in the Patents, all goodwill associated with the Patents, the right to prepare derivative works of the Patents and all claims of past, present or future infringement and/or royalties in connection with the Patents) was fully, absolutely, unconditionally and irrevocably sold, transferred and assigned to SBI, free and clear of any liens or other encumbrances, on June 15, 2001, as part of the Acquired Assets pursuant to the terms and conditions of the SBI APA and that at all times thereafter, the Trustee has not done anything inconsistent (nor will the Trustee do anything inconsistent) with SBI's right, title and interest in and to the Patents including, without limitation, not conveying any right, title or interest in either or both of the Patents to any party other than SBI. SBI acknowledges that since June 15, 2001, it has not sold, transferred or otherwise conveyed either of the Patents to any third party;

(b) The Trustee shall use reasonable efforts to locate and deliver to SBI at the Settlement Closing true and correct copies of the closing books for: (i) the acquisition of Ikonic Interactive, Inc. by USWeb Corporation on or about April 15, 1998 through a merger with USWeb Acquisition Corporation 125, a wholly-owned subsidiary of USWeb Corporation; and (ii) the acquisition of CKS Group, Inc. by USWeb Corporation on or about December 17, 1998 through a merger with USWeb Acquisition Corporation 134, a wholly-owned subsidiary of USWeb Corporation (collectively, the **"Closing Books"**);

(c) SBI shall take such actions, or omit to take such actions, with respect to either or both of the Patents, as SBI may determine, in its sole and absolute discretion, without notice of any kind to the Trustee and without any input of any kind from the Trustee including, without limitation, selling, transferring, pledging, conveying, assigning, licensing, using, disposing, allowing to lapse or expire, and/or taking no action of any kind with respect to either or both of the Patents; provided, however, that SBI agrees that in the event that SBI sells, licenses (either exclusively or not) or otherwise transfers any right, title or interest in or to any of the Patents to any person or entity (such act referred to herein as a **"Patent Transfer"**) during the "Transfer Period", as defined below, then SBI shall remit to the Trustee twenty percent (20%) of the "Net Proceeds", as defined below, by the applicable "Distribution Date(s)", also as defined below (the **"Remittance Payment"**). For purposes hereof: (i) **"Net Proceeds"** shall mean any and all cash or other types of consideration actually collected by SBI at any time in connection with a Patent Transfer that occurred during the Transfer Period (the **"Collected Proceeds"**) and after reimbursement to SBI of any and all actual out-of-pocket costs and expenses related to the Patents and incurred by SBI (and which have not been previously set-off against any Collected Proceeds in this Net Proceeds calculation) through the date that the Collected Proceeds are received by SBI; and (ii) **"Transfer Period"** shall mean the period

3

commencing on the Effective Date and ending on the earlier of (1) May 31, 2008, and (2) the date the Bankruptcy Case is closed.

(d) Within thirty (30) calendar days following each of the following two dates: (i) the six month anniversary of the Effective Date, and (ii) the one year anniversary of the Effective Date; SBI shall send to the Trustee and file with the Bankruptcy Court an affidavit signed by an authorized representative of SBI informing the Trustee whether or not a Patent Transfer occurred during the Transfer Period, which affidavit shall be substantially in the form attached hereto as Exhibit A and made a part hereof ("**Verified Statement**"). If a Patent Transfer does occur during the Transfer Period, then SBI shall deliver to the Trustee true and correct copies of any and all agreements or other documents which evidence the Patent Transfer (the "**Patent Transfer Documents**") at the time that the applicable Verified Statement is sent to the Trustee, provided, however, (i) the Patent Transfer Documents shall not be filed with the Bankruptcy Court, (ii) the Patent Transfer Documents shall be kept confidential by the Trustee, and shall not be disclosed to any third party except any agents of the Trustee such as attorneys, financial advisors, or other experts retained by the Trustee (collectively, the "**Trustee Representatives**") and only after the Trustee has obtained such Trustee Representative's written commitment to be bound by the terms of this subsection, and (iii) in the event the Trustee is requested pursuant to, or required by, applicable law or regulation or by legal process to disclose any Patent Transfer Documents, the Trustee shall provide SBI with written notice of such request(s) within three (3) business days of said request(s) to enable SBI to seek an appropriate protective order or take any other action it may deem appropriate;

(e) In the event that a Patent Transfer occurs during the Transfer Period, then SBI shall remit the Remittance Payment(s), if any, to the Trustee within one calendar month following the month in which SBI receives any Collected Proceeds (the "**Distribution Date(s)**");

(f) Except as expressly set forth in this paragraph 2, SBI shall have no further duties, obligations or responsibilities owing to the Trustee with respect to the Patents and the matters described herein of any kind or nature whatsoever. SBI's obligations and duties owing to the Trustee with respect to the Patents under this paragraph 2, including the Remittance Payments, if any, and the Trustee's Net Proceeds Security Interest and the Trustee's Patent Security Interest (as hereafter defined), shall be enforceable and valid as set forth herein notwithstanding the provisions of subsection 2(a) above;

(g) Under no circumstances shall SBI have any liability or obligation of any kind or nature whatsoever to the Trustee and/or the Debtors' Estates to remit all or any portion of any receipts, distributions, proceeds or other property or consideration received by SBI from or in connection with the Patents other than the Remittance Payments, if any, as specified in subparagraphs (c) and (e) above;

(h) Subject to the provisions of subparagraph (i) below, SBI hereby grants to the Trustee to secure the payment of any Remittance Payment(s) a lien and security interest in

4

and to (i) twenty percent (20%) of SBI's right, title and interest in the Net Proceeds, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "**Trustee's Net Proceeds Security Interest**") and (ii) SBI's right, title, and interest in the Patents (the "**Trustee's Patent Security Interest**"). Upon the entry of the Settlement Order, the Trustee shall be entitled to immediately cause a UCC Financing Statement Form UCC-1, in the form attached hereto as Exhibit B and made a part hereof, evidencing the Trustee's Net Proceeds Security Interest and the Trustee's Patent Security Interest to be recorded with the Utah Secretary of State's office at the Trustee's sole expense ("**Trustee's UCC Financing Statement**"); and

        (i)    With respect to each of the Patents individually, in the event that no Patent Transfer occurs within the Transfer Period for any reasons whatsoever, then in such case, immediately following the expiration of the Transfer Period, SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Net Proceeds Security Interest and the Trustee's Patent Security Interest in their entirety. With respect to each of the Patents individually, in the event that SBI determines, in its reasonable discretion, that the Trustee's Patent Security Interest will prevent or otherwise unreasonably impair SBI's ability to consummate a Patent Transfer during the Transfer Period (such as having the release thereof be a condition of closing of the sale of such Patent(s)), then SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Patent Security Interest, or any portion thereof, which is necessary to permit SBI to consummate such Patent Transfer as to such Patent(s). With respect to each of the Patents individually, in the event that a Patent Transfer occurs within the Transfer Period, then in such case, immediately following the payment(s) in full of the Remittance Payment to the Trustee, SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Net Proceeds Security Interest and the Trustee's Patent Security Interest, if any, in their entirety. With respect to each of the Patents individually, notwithstanding anything to the contrary contained herein, in the event that any of the Trustee's Patent Security Interest has not been previously released during the Transfer Period, then in such case, immediately following the expiration of the Transfer Period, SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Patent Security Interest. SBI shall promptly send to the Trustee a copy of any Amendment Form UCC-3 which it files pursuant to this subparagraph (i).

    **3.**    **Bankruptcy Court Approval.** The Trustee agrees to file and serve a joint motion to be prepared and agreed to by the parties hereto seeking the approval of the Bankruptcy Court for the settlement and compromise of all of their outstanding disputes and controversies pursuant to the terms and conditions of this Agreement. The parties hereto agree to use all reasonable diligence to obtain the entry of a final and non-appealable order of the Bankruptcy

Court approving same and dismissing the Patent Proceeding with prejudice ("**Settlement Order**"), which Settlement Order shall be substantially in the form attached hereto as <u>Exhibit C</u> and made a part hereof.

4. **Settlement Closing and Deliveries**.

(a) To consummate the terms and conditions contained herein, the parties hereto agree that the closing hereof shall occur on the eleventh (11th) day following the entry of the Settlement Order, or in the event such day falls on a weekend, the first business day thereafter ("**Settlement Closing**").

(b) At the Settlement Closing, SBI shall deliver to the Trustee the Trustee's UCC Financing Statement in recordable form.

(c) At the Settlement Closing, the Trustee agrees to deliver to SBI's counsel, Adelman & Gettleman, Ltd., true and correct copies of the Closing Books which it may locate pursuant to the provisions of subparagraph 2(b) above.

5. **Mutual General Releases**.

(a) SBI, for itself, and each of its past and present, officers, directors, shareholders, employees, agents, representatives, parent corporations, affiliates, subsidiaries, divisions, predecessors, partners, members, managers, attorneys, agents, insurers, representatives, successors and assigns, and each of them, as the case may be, (collectively, the "**SBI Releasors**"), do hereby unconditionally, absolutely and irrevocably remise, release and forever discharge the Trustee and the Debtors' Estates, and each of their respective past and present officers, directors, shareholders, employees, agents, representatives, parent corporations, affiliates, subsidiaries, divisions, predecessors, partners, members, managers, attorneys, insurers, successors and assigns, and each of them (collectively, the "**marchFIRST Releasees**"), from and against all manners of action, causes of action, suits, debts, accounts, promises, warranties, damages and consequential damages, demands, agreements, bonds, bills, specialties, covenants, controversies, variances, trespasses, judgments, executions, costs, expenses or claims whatsoever, in law or in equity, whether presently known to the SBI Releasors or whether not known, arising out of, under, or relating to the Patents, the Patent Dispute, and/or the Patent Proceeding (collectively, the "**SBI Released Claims**"), which the SBI Releasors, or any of them, now have or ever had, or can, shall or may have against the marchFIRST Releasees, upon or by reason of any manner, cause or thing whatsoever on or at any time prior to the date of these presents, it being the intention of each of the SBI Releasors to reserve nothing whatsoever hereunder with respect to the marchFIRST Releasees and to assure the marchFIRST Releasees their peace and freedom from all SBI Released Claims, provided, however, nothing contained in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement. **THE SBI RELEASORS HEREBY WAIVE AND RELINQUISH ALL RIGHTS AND BENEFITS THEY MAY HAVE UNDER ANY**

6

FEDERAL OR STATE LAW PROVIDING GENERALLY THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH PARTIES DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND WHICH IF KNOWN BY THEM MIGHT HAVE MATERIALLY AFFECTED THEIR SETTLEMENT WITH THE MARCHFIRST RELEASEES.

(b) The Trustee and the Debtors' Estates, for themselves and each of their respective past and present officers, directors, shareholders, employees, agents, representatives, parent corporations, affiliates, subsidiaries, divisions, predecessors, partners, members, managers, attorneys, agents, insurers, representatives, the Delaware Trustee, successors and assigns, and each of them, as the case may be, including, without limitation of the generality of the foregoing, any and all subsequently appointed trustees, liquidating agents or committees, and/or receivers appointed in the Bankruptcy Case, any subsequent case involving the Debtors under Chapter 7 or 11 of the Bankruptcy Code or any similar state court or legal proceeding (collectively, the "**marchFIRST Releasors**"), do hereby unconditionally, absolutely and irrevocably remise, release and forever discharge SBI, and each of its past and present officers, directors, shareholders, employees, agents, representatives, parent corporations, affiliates, subsidiaries, divisions, predecessors, partners, members, managers, attorneys, agents, insurers, representatives, successors and assigns, and each of them, as the case may be, (collectively, the "**SBI Releasees**"), from and against all manners of action, causes of action, suits, debts, accounts, promises, warranties, damages and consequential damages, demands, agreements, bonds, bills, specialties, covenants, controversies, variances, trespasses, judgments, executions, costs, expenses or claims whatsoever, in law or in equity, whether presently known to the marchFIRST Releasors or whether not known, arising out of, under, or relating to the Patents, the Patent Dispute, and/or the Patent Proceeding (collectively, the "**marchFIRST Released Claims**"), which the marchFIRST Releasors, or any of them, now have or ever had, or can, shall or may have against the SBI Releasees, upon or by reason of any manner, cause or thing whatsoever on or at any time prior to the date of these presents, it being the intention of each of the marchFIRST Releasors to reserve nothing whatsoever hereunder with respect to SBI Releasees and to assure the SBI Releasees their peace and freedom from all marchFIRST Released Claims, provided, however, nothing contained in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement. **THE MARCHFIRST RELEASORS HEREBY WAIVE AND RELINQUISH ALL RIGHTS AND BENEFITS THEY MAY HAVE UNDER ANY FEDERAL OR STATE LAW PROVIDING GENERALLY THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH PARTIES DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND WHICH IF KNOWN BY THEM MIGHT HAVE MATERIALLY AFFECTED THEIR SETTLEMENT WITH THE SBI RELEASEES.**

6. **Representations and Warranties of SBI.** SBI represents and warrants to the Trustee, with the intent and understanding that the Trustee is expressly relying thereon as a material inducement to enter into this Agreement, that:

      (a)    SBI is a corporation duly organized and existing in good standing under the laws of the state of Utah. All necessary governance actions have been taken in order to authorize the execution, delivery and performance of this Agreement;

      (b)    SBI has the full right, power and authority to enter into, execute, deliver and perform under this Agreement and to consummate the transactions contemplated herein, and upon execution and delivery, this Agreement will be a valid, binding, subsisting and enforceable obligation of SBI. This Agreement and all documents and instruments related hereto have been, and will be duly executed and delivered by a duly authorized representative of SBI;

      (c)    To the best of its knowledge, information, and belief, the execution, delivery and/or performance of this Agreement by SBI shall not, by the lapse of time, the giving of notice or otherwise, constitute a violation of any applicable law or a breach of any agreement, instrument or document to which SBI is now or hereafter may be a party or by which it may be bound; and

      (d)    SBI has not assigned, transferred or otherwise conveyed to any person or entity any of the rights, title, claims or interests being transferred, released and/or settled by SBI herein or otherwise being dealt with in this Agreement.

      7.    **Representations and Warranties of the Trustee**. The Trustee represents and warrants to SBI, with the intent and understanding that SBI is expressly relying thereon as a material inducement to enter into this Agreement, that:

      (a)    The Trustee is the duly appointed and acting permanent trustee of the Debtors' Estates in the Bankruptcy Case. Upon the entry of the Settlement Order, all necessary actions on behalf of the Trustee and the Debtors' Estates shall have been taken in order to authorize the execution, delivery and performance of this Agreement;

      (b)    Subject only to the approval of the Bankruptcy Court, the Trustee has the full right, power and authority to enter into, execute, deliver and perform under this Agreement and to consummate the transactions contemplated herein, and upon execution and delivery, this Agreement will be a valid, binding, subsisting and enforceable obligation of the Trustee and the Debtors' Estates. This Agreement and all documents and instruments related hereto have been, and will be duly executed and delivered by the Trustee;

      (c)    To the best of his knowledge, information and belief, the execution, delivery and/or performance of this Agreement by the Trustee shall not, by the lapse of time, the giving of notice or otherwise, constitute a violation of any applicable law or a breach of any agreement, instrument or document to which the Trustee or the Debtors' Estates are now or hereafter may be a party or by which they may be bound;

8

(d) The Trustee hereby acknowledges and agrees as follows:

(i) Except as expressly provided in paragraph 2 above, the execution and consummation of the transactions contemplated in this Agreement shall not create or give rise to any right, title, lien, claim, encumbrance or interest in favor of the Trustee and/or the Debtors' Estate in and to: (1) the Patents, or any portion thereof; and/or (2) any distributions, proceeds or other property or consideration received by SBI from or in connection with the Patents;

(ii) SBI shall be entitled to take such actions, or omit to take such actions, with respect to either or both of the Patents as SBI may determine, in its sole and absolute discretion, without notice of any kind to the Trustee and without any input of any kind from the Trustee, including, without limitation, selling, transferring, pledging, conveying, assigning, licensing, using, disposing, allowing to lapse or expire, and/or taking no action of any kind with respect to either or both of the Patents;

(iii) SBI has made no statements, representations, conditions or warranties of any kind or nature whatsoever, whether express or implied, in connection with the likelihood of a Patent Transfer occurring during the Transfer Period or otherwise, or of any Net Proceeds being recovered from any such Patent Transfer or otherwise; and

(iv) Except as expressly set forth in paragraph 2 above with respect to the delivery of the Remittance Payment, if applicable, the Verified Statement, and the Trustee's UCC financing Statement, SBI shall have no other duties, obligations, liabilities or responsibilities owing to the Trustee of any kind or nature whatsoever with respect to the Patents; and

(f) Neither the Trustee nor the Debtors' Estates have assigned, transferred or otherwise conveyed to any person or entity any of the rights, title, claims or interests being released and/or settled by the Trustee herein or otherwise being dealt with in this Agreement.

8. **Binding Effect**. Upon the entry of the Settlement Order, the terms of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

9. **Survival of Representations and Warranties**. The representations, warranties and covenants contained herein shall survive the execution and delivery and closing hereof, and shall remain in full force and effect until a claim based thereon is barred by applicable statutes of limitation. The Bankruptcy Court shall reserve full and exclusive jurisdiction to hear and determine any and all matters relating to this Agreement.

10. **No Waiver**. The failure of the parties hereto to insist upon strict compliance with

any of the terms or conditions hereof shall not be deemed or construed as a waiver of such term or condition nor should any waiver or relinquishment of any right or power hereunder at any one or more times be deemed or construed as a waiver or relinquishment of such right or power at any other time or times.

11. **Future Deliveries.** The parties hereto hereby agree to execute and deliver promptly such additional documents and instruments, and take such other actions, as the other party hereto may reasonably request to effectuate the purposes of this Agreement.

12. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and is the final and complete expression of their intent. No prior or contemporaneous negotiations, promises, agreements, covenants, or representations of every kind or nature, whether made orally or in writing, have been made by the parties, or either of them, in negotiations leading to this Agreement or relating to the subject matter hereof, which are not expressly contained herein, or which have not become merged and finally integrated into this Agreement; it being the intention of the parties hereto that in the event of any subsequent litigation, controversy, or dispute concerning the terms and provisions of this Agreement, no party shall be permitted to offer to introduce oral or extrinsic evidence concerning the terms and conditions hereof that are not included or referred to herein and not reflected in writing. This Agreement can only be changed, modified or discharged if consented to in writing executed by all of the parties hereto. No conditions exist to the legal effectiveness of this Agreement unless expressly set forth herein.

13. **Choice of Law and Jurisdiction.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of Illinois.

14. **Contract Review.** All parties hereto agree that this Agreement has been drafted jointly by the parties hereto in full consultation with their respective attorneys, and in the event of any ambiguity or conflict in the terms hereof, there shall be no presumption against any of the parties as the drafter hereof.

15. **Headings**. The paragraph headings used in this Agreement are for convenience only, and do not in any way limit, amplify, or affect the terms or conditions hereof.

16. **Severability.** If any provision of this Agreement shall be judicially determined to be unenforceable or invalid, the remainder of this Agreement shall be unaffected to the greatest extent possible.

17. **Time.** Time is of the essence to this Agreement.

18. **Counterparts**. This Agreement may be executed in one or more counterparts all of which taken together constitute one and the same instrument. Signatures by facsimile shall constitute original signatures.

19. **Notice.** Any notice required or permitted to be given to the parties pursuant to the terms of this Agreement will be in writing and deemed to have been duly given: (1) upon delivery in person, (2) three business days after being mailed, by United States certified mail, return receipt requested, or (3) the following business day after sent via a reputable overnight courier. Notices shall be sent to the following addresses:

If to SBI:

SBI Services, Inc.
2825 E. Cottonwood Parkway
Suite 450
Salt Lake City, UT 84121
Attn:   Mr. L. Timothy Pierce, CFO

With a copy to:

Chad H. Gettleman, Esq.
Brad A. Berish, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604

If to the Trustee:

Andrew J. Maxwell, Esq.
Maxwell & Potts, LLC
105 W. Adams, St., Suite 3200
Chicago, IL 60603

With a copy to:

Faustin A. Pipal, Jr., Esq.
Pipal & Berg, LLP
150 S. Wacker Dr., Suite 2650
Chicago, IL 60606

20. **Attorneys' Fees.** If either party to this Agreement brings an action against the other party to enforce its rights under this Agreement, the prevailing party shall be entitled to recover its costs and expenses including, without limitation, attorneys' fees and costs incurred in connection with such action.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the day and year first written above.

SBI SERVICES, INC.,
a Utah corporation

By: _____
Its President

ANDREW J. MAXWELL, as Trustee for the estates of marchFIRST, Inc., et al. in the Bankruptcy Case

By: _____ (Patents)
Andrew J. Maxwell, Trustee 8/3/07

12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: <br>     marchFIRST, Inc., et al., <br><br>         Debtor. | ) ) ) ) ) ) ) ) ) | Chapter 7 <br> Case No. 01 B 24742 <br> (Substantively Consolidated) <br><br> Honorable John D. Schwartz |
| SBI SERVICES, INC., a Utah corporation, <br><br>         Plaintiff, <br><br> v. <br><br> ANDREW J. MAXWELL, as Trustee for the estates of marchFIRST, Inc., et al., <br><br>         Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. No. 06-01283 |

## AFFIDAVIT

I, _____, pursuant to 28 U.S.C. §1746, hereby depose and state under penalties of perjury as follows:

1. I am the _____ of SBI Services, Inc., a Utah corporation ("**SBI**").

2. I make this affidavit in connection with that Settlement Agreement dated _____, 2007, by and between SBI and Andrew J. Maxwell, as Trustee for the estates of marchFIRST, Inc., et al., in the above referenced Bankruptcy Case (the "**Settlement Agreement**").

3. Capitalized terms not otherwise defined herein, shall have the meanings as set forth in the Settlement Agreement.

EXHIBIT A

75721.1 6/28/07

1

4.  As of the date of this Affidavit, a Patent Transfer (has _____ [or] has not _____) [check foregoing appropriate box] occurred during the Transfer Period.

5.  I state under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Affiant further sayeth naught.

Dated:_____

_____
[sign name]

_____
[print title on behalf of SBI Services, Inc.]

SUBSCRIBED AND SWORN TO
THIS ____ DAY OF
_____, 200__ .

_____
NOTARY PUBLIC

75721.1 6/28/07                                    2

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: **SBI Services, Inc.**

1c. MAILING ADDRESS: 2825 E. Cottonwood Parkway, Suite 450 | CITY: Salt Lake City | STATE: UT | POSTAL CODE: 84121 | COUNTRY: USA

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: **Andrew J. Maxwell, as Trustee for the Bankruptcy Estates of marchFIRST, Inc., et al.**

3c. MAILING ADDRESS: 105 W. Adams, Suite 3200 | CITY: Chicago | STATE: IL | POSTAL CODE: 60603 | COUNTRY: USA

4. This FINANCING STATEMENT covers the following collateral:

a. U.S. Patent No. 5,544,354 issued August 6, 1996 entitled "Multimedia Matrix Architecture User Interface"; and U.S. Patent No. 6,215,502 issued April 10, 2001 entitled "Method and Apparatus for Automatically Reconfiguring Graphical Objects Relative to New Graphical Layouts" (collectively, the "Patents").

b. Twenty percent (20%) of debtor's right, title and interest in any and all cash or other types of consideration actually collected by debtor at any time in connection with any "Patent Transfer" (as that quoted term is defined in the Settlement Agreement dated June 1, 2007 between debtor and secured party (the "Settlement Agreement")) occurring during the "Transfer Period" (as such quoted term is defined in the Settlement Agreement).

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING
6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2
8. OPTIONAL FILER REFERENCE DATA

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)


EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
|     marchFIRST, Inc., et al., | ) | Chapter 7 |
| | ) | Case No. 01 B 24742 |
|         Debtor. | ) | (Substantively Consolidated) |
| | ) | |
| | ) | Honorable John D. Schwartz |
| _____ | ) | |
| | ) | |
| SBI SERVICES, INC., a Utah corporation, | ) | |
| | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW J. MAXWELL, as Trustee for | ) | |
| the estates of marchFIRST, Inc., et al., | ) | Adv. No. 06-01283 |
| | ) | |
|         Defendant. | ) | |

## ORDER APPROVING SETTLEMENT
## AND DISMISSING COMPLAINT

At Chicago, in said District, this _____ day of _____, 2007.

THIS CAUSE coming on to be heard upon the joint motion of ANDREW J. MAXWELL, as Trustee for the estates of marchFIRST, Inc., et al., in the above referenced bankruptcy cases ("**Trustee**"), and SBI SERVICES, INC., a Utah corporation ("**SBI**"), to settle and compromise certain of their outstanding disputes and controversies in accordance with Bankruptcy Rules 2002(a), 9006(c) and 9019(a), and the terms and conditions of that certain Settlement Agreement attached hereto as Exhibit A and made a part hereof (the "**Settlement Agreement**")(the "**Motion**"); due written notice hereof having been given to all parties entitled thereto; good cause having been shown for the entry hereof; no objections having been heard to the entry hereof; the

75724                                                                 1


EXHIBIT C

Court having reviewed the Motion and having heard the statements of counsel present, and being otherwise fully advised in the premises;

**NOW, THEREFORE, IT IS HEREBY ORDERED** as follows:

1. The Motion is hereby granted in its entirety. Capitalized terms herein shall have the same meaning as set forth in the Settlement Agreement unless otherwise noted.

2. The Trustee is hereby authorized and directed to fulfill the obligations under the Settlement Agreement forthwith, and to take such steps and execute and deliver such additional documents as may be necessary to fully effectuate the terms and conditions thereof without further order of this Court.

3. All right, title and interest of every kind or nature whatsoever, in and to the following two (2) patents which were owned by the Sellers: (a) U. S. Patent No. 5,544,354 issued August 6, 1996 entitled "Multimedia Matrix Architecture User Interface"; and (b) U. S. Patent No. 6,215,502 issued April 10, 2001 entitled "Method and Apparatus for Automatically Reconfiguring Graphical Objects Relative to New Graphical Layouts"(collectively, the **"Patents"**), including, without limitation, all know-how incorporated in the Patents, all goodwill associated with the Patents, the right to prepare derivative works of the Patents and all claims of past, present or future infringement and/or royalties in connection with the Patents, are hereby deemed to have been fully, absolutely, unconditionally and irrevocably sold, transferred and assigned to SBI, free and clear of any liens or other encumbrances, on June 15, 2001 as part of the Acquired Assets pursuant to the terms and conditions of the SBI APA and the Sale Order.

4. With respect to each of the Patents individually, in the event that no Patent

Transfer occurs within the Transfer Period for any reasons whatsoever, then in such case, immediately following the expiration of the Transfer Period, SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Net Proceeds Security Interest and the Trustee's Patent Security Interest in their entirety. With respect to each of the Patents individually, in the event that SBI determines, in its reasonable discretion, that the Trustee's Patent Security Interest will prevent or otherwise unreasonably impair SBI's ability to consummate a Patent Transfer during the Transfer Period (such as having the release thereof be a condition of closing of the sale of such Patent(s)), then SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Patent Security Interest, or any portion thereof, which is necessary to permit SBI to consummate such Patent Transfer as to such Patent(s). With respect to each of the Patents individually, in the event that a Patent Transfer occurs within the Transfer Period, then in such case, immediately following the payment(s) in full of the Remittance Payment to the Trustee, SBI shall be entitled without further act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Net Proceeds Security Interest and the Trustee's Patent Security Interest, if any, in their entirety. With respect to each of the Patents individually, notwithstanding anything to the contrary contained herein, in the event that any of the Trustee's Patent Security Interest has not been previously released during the Transfer Period, then in such case, immediately following the expiration of the Transfer Period, SBI shall be entitled without further

act, notice, deed or court order, to cause a UCC Amendment Form UCC-3 to be recorded with the Utah Secretary of State's office, at SBI's sole expense, terminating the Trustee's Patent Security Interest. SBI shall promptly send to the Trustee a copy of any Amendment Form UCC-3 which it files pursuant to this paragraph 4.

5. The Patent Proceeding is hereby dismissed with prejudice, and without costs being assessed against any of the parties thereto.

6. The terms of this Order and the Settlement Agreement are hereby binding upon Trustee, the Debtors, the Debtors' Estates, all creditors and equity security holders of the Debtors, and all of their respective successors and assigns, including without limitation, any and all subsequently appointed trustees, liquidating agents, representatives, committees, and/or receivers appointed in the Bankruptcy Case, in any subsequent case involving the Debtors, or any of them, under Chapter 7 or 11 of the Bankruptcy Code or in any similar state court or legal proceeding.

7. This Court shall have exclusive jurisdiction to hear any and all matters arising out of this Order and/or the Settlement Agreement.

ENTER:

_____
U. S. Bankruptcy Judge

*This order prepared by:*
CHAD H. GETTLEMAN, ESQ.(ARDC #944858)
BRAD A. BERISH, ESQ. (ARDC #06200891)
ADELMAN &, GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050

Attorneys for SBI Services, Inc.

75724                                                              4